**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JOSEPH LUTZ,

      Plaintiff,

v.                                    Case No.:

LEXJAX, INC., d/b/a
MERCEDES-BENZ OF ORANGE PARK,

      Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiff, Joseph Lutz ("Plaintiff"), by and through the undersigned counsel, and by way of Complaint against the Defendant, LexJax Inc., d/b/a Mercedes-Benz of Orange Park (the "Defendant" or "LexJax") for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000(e) *et seq.* ("Title VII"), the Florida Civil Rights Act of 1992, Fla. Stat. §§ 760.01 *et. seq.* (the "FCRA"), and 42 U.S.C. § 1981 ("Section 1981"), alleges as follows:

## JURISDICTION AND PARTIES

1.     At all times material hereto, Plaintiff Joseph Lutz has been a resident of Ponte Vedra Beach, St. Johns County, Florida.

2.     At all times material hereto, Plaintiff Lutz was a member of the

Jewish faith and ancestry.

3.      Defendant LexJax is a Florida corporation.

4.      Plaintiff was employed by Defendant LexJax at its location at 7018 Blanding Blvd., Jacksonville, Florida (the "dealership").

5.      Defendant LexJax is, and has been, a covered employer within the meaning of the Title VII and the FCRA.

6.      Plaintiff was a covered employee of Defendant LexJax within the meaning of Title VII and the FCRA at all times relevant herein.

7.      This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343, 28 U.S.C. § 1367, 42 U.S.C. § 2000e(5)(f)(3), and 42 U.S.C. § 1988(a).

8.      A substantial part of the acts complained of herein occurred in the City of Jacksonville, Duval County, Florida. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

## FACTUAL BACKGROUND

9.      Mr. Lutz worked for LexJax from on or about May 2017 until his constructive discharge on or about April 2020. Mr. Lutz was employed by LexJax as a Car Salesman.

10.     Prior to working in automotive sales, Plaintiff Lutz was in law

enforcement as a New York State Police Officer. Plaintiff retired from law enforcement and moved to Florida.

11.     At all times relevant hereto, Aaron Mong was an employee of and agent for LexJax acting directly and/or indirectly in the interest of LexJax.

12.     At all times relevant hereto, Mr. Mong was employed as a supervisor, including over Mr. Lutz, specifically his designation was as General Manager of the LexJax dealership where Plaintiff worked.

13.     At all times relevant hereto, L.J. Walters was an employee of and agent for LexJax acting directly and/or indirectly in the interest of LexJax.

14.     At all times relevant hereto, Mr. Walters was employed as a supervisor, including over Mr. Lutz, specifically his designation was as a New Car Manager of the dealership where Plaintiff worked.

15.     Mr. Lutz had a successful career with LexJax until a change in management. In his role as a Car Salesman, Mr. Lutz was a top performer for three years and was named Salesman of the Year.   Mr. Lutz was compensated only through commission of cars sold.

16.     In approximately October 2018, LexJax changed its management team at the dealership where Plaintiff worked. From that point until his constructive discharge, Mr. Mong and Mr. Walters promoted and condoned a hostile work

environment in which Mr. Lutz was harassed on the basis of his religion and ancestry on a regular and continuing basis. Further, Mr. Lutz faced retaliation due to his complaints about both forms of unlawful harassment.

17.     After learning of Mr. Lutz's religion, Mr. Walters made numerous comments in the workplace that were of an anti-Semitic nature. For example, Mr. Walters and another salesman, George Vogt, would both speak of Adolph Hitler and how the "Jews got what they deserved" in the presence of Plaintiff.

18.     Mr. Walters also spoke about concentration camps and how Hitler did a remarkable job cleansing Europe of Jews. Mr. Vogt responded by expressing his wish that the same could be done in the United States. The two both laughed in agreement. This took place in the presence of Mr. Lutz and this type of behavior continued throughout Mr. Lutz's employment with Defendant.

19.     Mr. Walters also made statements using stereotypes of Jews. For example, Mr. Lutz was standing at the front desk at the dealership with the receptionist when Mr. Walters walked up to the desk and dropped coins on the floor. Mr. Walters then said to Mr. Lutz something to the effect of, "You want those? You're the Jew, so I figured you'd picked them up!"

20.     During Mr. Lutz's employment, at times management would post successful car sales on a whiteboard in the dealership, identifying the vehicle that

had been sold as well as the sales person who was responsible for the sale. On or about January 26, 2019, after a day in which Mr. Lutz was responsible for successful sales, Mr. Lutz went into the sales office and observed symbols related to the Jewish faith (e.g., a Menorah, Dreidel, and Torah) in place of his name on the whiteboard. The whiteboard's location was such that it could be visible to both employees and customers. Mr. Lutz was under the impression that it was the General Manager, Aaron Mong, responsible for the symbols, as he was usually the one to log sales on the board.

21.     Social media websites also demonstrates Mr. Vogt's intent to harass Plaintiff on account of his religion and ancestry. Mr. Vogt, a salesman at the dealership who appeared to have a close relationship with Mr. Walters and Mr. Mong, posted images depicting the Auschwitz Concentration Camp, where the Nazis murdered almost 1 million of Jews and others. Additionally, Mr. Vogt posted an image depicting a Nazi-related quote at least three separate times on a social media website.

22.     Regularly, Mr. Vogt would speak to Mr. Lutz in an exaggerated German accent. In the context of other statements of an anti-Semitic nature by Mr. Vogt, Plaintiff believes Mr. Vogt would use the said accent because of Mr. Lutz's religion and ancestry to mock Mr. Lutz.

23.   In another instance on social media, when a different Jewish employee of LexJax working at the dealership posted a photograph of a meal on Facebook, Mr. Mong commented asking if the food was Kosher.

24.   Following Mr. Walters supervision of Plaintiff, Mr. Walters began to make inappropriate and unwarranted statements to Mr. Lutz regarding his clients. For example, Mr. Walters told Mr. Lutz that, due to Mr. Lutz's polite manners and friendly customer service, he was letting the customers take advantage of the dealership, and suggested that Mr. Lutz not interact with certain customers of South Asian or African American decent.

25.   Mr. Lutz first informed Mr. Mong of his increasing problems with Mr. Walters' behavior toward him in approximately November 2018. After a day in which Mr. Lutz sold and delivered two vehicles at the dealership, Mr. Lutz had just returned to his office, which Mr. Walters could view of from his own office, when Mr. Walters called Mr. Lutz's desk phone. Mr. Walters instructed Mr. Lutz to make cold phone calls to prospective customers in order to make some appointments for the following day. At this time of the evening, Mr. Lutz was there on his own time and not scheduled to be working, but had remained because all of the sales staff had left the building except for Mr. Lutz and one other salesman. After Mr. Lutz explained to Mr. Walters that he was working on his own time and had sold and

delivered two cars that day, Mr. Walters became aggressive and antagonistic with Plaintiff. Mr. Walters threatened Mr. Lutz and demanded that Mr. Lutz follow his directions.

26.     In order to calm tensions and express his discomfort with the treatment by Mr. Walters, Mr. Lutz walked into the office of the General Manager of the dealership, Mr. Mong, and advised Mr. Mong of the discussion with Mr. Walters and that Mr. Walters had been unfairly picking on him in the past. Mr. Lutz told Mr. Mong that he was not comfortable working in a hostile work environment. Mr. Mong then advised Mr. Lutz there were plenty of other jobs out there, implying that Mr. Lutz could find employment elsewhere if he did not like how he was treated.

27.     Mr. Mong also expressed no interest in Mr. Lutz's complaint, but said he would schedule a meeting to discuss Mr. Lutz's concerns. Mr. Mong scheduled a meeting with Mr. Lutz and Mr. Walters. Mr. Mong did not attend, and Mr. Walters conducted the meeting. Mr. Lutz felt there was nothing constructive that resulted from the meeting.

28.     The religious harassment directed at Mr. Lutz continued, and evolved into retaliation. During the remainder of 2018 and into January 2019, the management of the dealership stopped giving Mr. Lutz any client leads, which in the past were regularly provided and were important for Mr. Lutz and other salespersons

to make sales. Based upon his observations in the workplace and interaction with Mr. Walters and Mr. Mong, Mr. Lutz believed that the reason for this was that he had reported Mr. Walters' behavior to Mr. Mong.

29.     Members of the dealership management team of Defendant LexJax also engaged in intentional interference with Mr. Lutz's work. The company recognizes a top salesperson for each year, and Mr. Lutz worked extremely hard during year 2019 to obtain this award. During the course of 2019, Mr. Walters saw that Mr. Lutz was on track to make the most sales for the year, so he began to carry out actions in order to sabotage a number of Mr. Lutz's sales so that he would not be the top salesperson. For example, Mr. Lutz had a customer who told him that they intended to buy a specific car, but were not able to complete the purchase that evening because of dinner reservations. At that time, the management had a policy that sales personnel were to bring in a manager anytime a customer wanted to leave the store or think about the purchase overnight. When Mr. Walters came to speak with the potential buyer, Mr. Walters was rude, unprofessional, and made racial based remarks implying that the customer would not be able to afford the vehicle because she was African American.

30.     Mr. Walters interfered and prevented Mr. Lutz from carrying out approximately nine (9) sales during 2019. When Mr. Lutz had a conversation with

Mr. Mong about Mr. Walters' purposeful attempts at preventing Mr. Lutz's sales efforts, rather than intervene, Mr. Mong created more hostility by telling Mr. Walters of Mr. Lutz's complaints and objections.

31.     After Mr. Lutz's reporting of and objections to improper behavior by Mr. Walters and Mr. Mong, a campaign of retaliation against him was initiated. For example, Mr. Walters would use his position as Mr. Lutz's supervisor to assign additional work, create impossible-to-meet standards, and write him up for actions where other similarly situated employees were not written up.

32.     In the summer of 2019, Mr. Lutz was assigned to assist newly hired employees of the company with their training and to show them daily work procedures. Mr. Lutz took on this assignment without any extra compensation or questions, even though it took him away from selling cars. As 2020 approached, management advised that new protocol would be starting where all salespersons would be required to make 10 outbound phone calls per day. On two separate occasions Mr. Walters wrote Mr. Lutz up for only making 5 phone calls on a day when he sold and delivered 4 cars, and 8 calls on a day in which he sold 1 car and delivered another. On both occasions, even though the store closed at 6 p.m., Mr. Lutz was not able leave work until approximately 10 p.m. This took place on Saturday, the Jewish Sabbath. After being written up on the second occasion by Mr.

Walters, Mr. Lutz let Mr. Mong know that he was very upset and felt that he was being treated unfairly since he was fulfilling all roles assigned to him, and going above and beyond to assist other staff in the dealership as well. Mr. Mong seemed uninterested with Mr. Lutz's complaint, and instead acted as if Mr. Lutz was bothering him and made jokes about the situation.

33.     In or around March 2020, Gena Jankowski, from the Human Resources department, invited all new hire liaisons out to a restaurant for a luncheon. At this lunch, Mr. Lutz told Ms. Jankowski that he felt that Mr. Walters was singling him out and was writing him up for being unable to make a few phone calls while trying to complete his other duties and selling cars. When the group returned to the dealership from lunch, Mr. Lutz observed Mr. Mong departing Ms. Jankowski's office. After this, Mr. Lutz's treatment at the dealership became intolerable.

34.     On or about the second week of March 2020, at approximately 2:30 p.m., Mr. Lutz was in the lunchroom eating when Mr. Walters also walked in to eat. The two of them were alone in the room when Mr. Walters accused Mr. Lutz of being insubordinate for going to Human Resources and told him something to the effect of, "If you don't fall in line with my management style, and my program, you will have a tough time making a living at the company." Mr. Lutz responded that he was not insubordinate, since he felt that he was doing everything asked of him and

more. Mr. Lutz told Mr. Walters that he was making the 10 phone calls a day. Mr. Walters agreed, but then threatened Mr. Lutz that he would continue withholding sales leads.

35.    Throughout Mr. Lutz's careers in law enforcement, where he was a 9/11 first responder, and in the car business, Mr. Lutz had never encountered such harassing and unfair treatment of threats to his livelihood, nor had he ever had his religion and ancestry publicly ridiculed. Due to the hostile work environment and retaliatory actions perpetrated by management on account of his religion and ancestry as well as complaints of unlawful harassment, Mr. Lutz was forced to leave the intolerable condition in the dealership's workplace and ended his employment in April 2020.

36.    LexJax had a duty to provide Mr. Lutz with a workplace free from unlawful discrimination and harassment.

37.    LexJax breached its duty to Mr. Lutz by tolerating and facilitating a hostile work environment where demeaning, offensive and abusive behaviors were regularly directed at Mr. Lutz because of his religion and ancestry.

38.    Plaintiff timely dual filed a Charge of Discrimination against Defendant with the U.S. Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") for discrimination and

11

retaliation (referred to herein as the "Charge").

39.     The EEOC issued and mailed a Notice of Right to Sue to Plaintiff. Plaintiff has filed this Complaint within 90 days of his receipt of the Notice of Right to Sue.

40.     More than 180 days have passed since the filing of Plaintiff's Charge, and no determination has been issued by the FCHR.

41.     All administrative prerequisites, if any, have been met for each claim brought in this Complaint, and each such claim is timely brought.

## COUNT I
### (Violation of Title VII (42 U.S.C. §§ 2000e *et seq*.) – Religious Harassment and Discrimination)

42.     Plaintiff incorporates by reference herein and realleges the allegations in Paragraphs 1 – 41 above as though set forth fully herein.

43.     During Plaintiff's employment, Defendant LexJax, by and through its agents, officials and/or employees, unlawfully discriminated against Plaintiff because of his religion, Judaism, in violation of Title VII, by, among other ways, subjecting Plaintiff to disparate terms and conditions of employment and adversely affecting Plaintiff's working conditions by, among other ways, harassing behavior on account of Plaintiff's religion; and failing to take prompt remedial action to stop the religious based harassment and discriminatory treatment to which Plaintiff was

being subjected.

44.     During the course of Plaintiff's employment with Defendant LexJax, and under the supervision of Mr. Walters and Mr. Mong, Plaintiff was subjected to religious harassment, *inter alia*, including derogatory, offensive and unwelcome remarks, the interference of carrying out his business and other harassment made on account of his religion, Judaism.

45.     In addition, Defendant LexJax constructively terminated Plaintiff's employment because of his religion, by creating and tolerating and intolerable workplace in violation of Title VII.

46.     The acts and omissions committed by Defendant LexJax were willful, malicious and in reckless disregard of Plaintiff's federally protected civil rights.

47.     As a direct and proximate result of Defendant LexJax's discriminatory actions, Plaintiff has suffered and will continue to suffer lost wages, benefits and entitlements, damage to his career and reputation, personal humiliation, mental anguish, and embarrassment justifying an award including, but not limited to, back pay, lost benefits, front pay, and compensatory and punitive damages against Defendant LexJax.

## COUNT II
### (Violation of 42 U.S.C. § 1981 – Discrimination)

48.     Plaintiff hereby incorporates and re-alleges by reference herein the

allegations in Paragraphs 1- 41 above as though set forth fully herein.

49.     Plaintiff is of Jewish ancestry and was employed by Defendant during the time period relevant herein.

50.     During Plaintiff's employment, Defendant LexJax, by and through its agents, officials and/or employees, unlawfully discriminated against Plaintiff because of his Jewish ancestry, in violation of 42 U.S.C. § 1981, by, among other ways, subjecting Plaintiff to disparate terms and conditions of employment and adversely affecting Plaintiff's working conditions by, among other ways, harassing behavior on account of Plaintiff's ancestry; and failing to take prompt remedial action to stop the harassment based discriminatory treatment to which Plaintiff was being subjected.

51.     In addition, Defendant constructively terminated Plaintiff's employment because of his Jewish ancestry by creating and tolerating and intolerable workplace in violation of 42 U.S.C. § 1981.

52.     Plaintiff was injured and negatively affected because of this discriminatory work environment, and because of his discriminatory termination.

53.     The acts and omissions committed by Defendant and its agents, officials and/or employees were willful, wanton, intentional, conscious and malicious and in deliberate disregard of Plaintiff's civil rights.

14

54.     As a direct and proximate result of Defendant LexJax's actions, Plaintiff has suffered lost wages, benefits and entitlements, damage to his career and reputation, personal humiliation, mental anguish, and embarrassment justifying an award including, but not limited to, back pay, lost benefits, front pay, compensatory, consequential and punitive damages against Defendant LexJax.

**COUNT III**
**(Violation Of Florida Civil Rights Act Of 1992,**
**Fla. Stat. §§ 760 *et Seq*.- Religious Harassment And Discrimination)**

55.     Plaintiff hereby incorporates and re-alleges by reference herein the allegations in Paragraphs 1- 41 above as though set forth fully herein.

56.     During Plaintiff's employment, Defendant LexJax, by and through its agents, officials and/or employees, unlawfully discriminated against Plaintiff because of his religion, Judaism, in violation of the FCRA, by, among other ways, subjecting Plaintiff to disparate terms and conditions of employment and adversely affecting Plaintiff's working conditions by, among other ways, harassing behavior on account of Plaintiff's religion; and failing to take prompt remedial action to stop the harassment based discriminatory treatment to which Plaintiff was being subjected.

57.     During the course of Plaintiff's employment with Defendant LexJax, and under the supervision of Mr. Walters and Mr. Mong, Plaintiff was subjected to

religious harassment, *inter alia*, including derogatory, offensive and unwelcome remarks, the interference of carrying out his business and other harassment made on account of his religion, Judaism.

58.    In addition, Defendant LexJax constructively terminated Plaintiff's employment because of his religion, by creating and tolerating and intolerable workplace in violation of the FCRA.

59.    The acts and omissions committed by Defendant LexJax were willful, malicious and in reckless disregard of Plaintiff's protected civil rights under the FCRA.

60.    As a direct and proximate result of Defendant LexJax's discriminatory actions, Plaintiff has suffered and will continue to suffer lost wages, benefits and entitlements, damage to his career and reputation, personal humiliation, mental anguish, and embarrassment justifying an award including, but not limited to, back pay, lost benefits, front pay, and compensatory and punitive damages against Defendant LexJax.

## COUNT IV
### (Violation Of Title VII- Retaliation)

61.    Plaintiff restates and realleges each and every factual allegation contained in paragraphs 1 through 41 above as though set forth fully herein.

62.    Plaintiff Lutz engaged in protected activity by objecting to religious

16

discrimination in the workplace at Defendant' dealership, including complaints to Defendant's representatives who were also otherwise informed of Plaintiff's complaints of discrimination. At all times relevant herein, Plaintiff Lutz held a reasonable good faith belief that his treatment in the workplace by Defendant was discriminatory conduct on account of his religion.

63.     After Plaintiff Lutz engaged in protected activity, and because of his engagement in that activity, Defendant LexJax took adverse action against the Plaintiff in violation of Title VII by, *inter alia*, constructively discharging Plaintiff from his employment, refusing to give Plaintiff sales leads, interfering with sales, unfairly disciplining Plaintiff, scrutinizing Plaintiff's work differently from other employees, and harassing Plaintiff.

64.     The acts and omissions committed by Defendant directed at Plaintiff were willful, malicious and in reckless disregard of Plaintiff's federally protected civil rights.

65.     As a direct and proximate result of Defendant LexJax's retaliatory actions, Plaintiff has suffered and will continue to suffer lost wages, benefits and entitlements, damage to his career and reputation, personal humiliation, mental anguish, and embarrassment justifying an award including, but not limited to, back pay, lost benefits, front pay, and compensatory and punitive damages against

17

Defendant.

## COUNT V
### (Violation Of Florida Civil Rights Act Of 1992,
### Fla. Stat. §§ *760 et seq.*- Retaliation)

66.     Plaintiff restates and realleges each and every factual allegation

contained in paragraphs 1 through 41 above as though set forth fully herein.

67.     Plaintiff Lutz engaged in protected activity by objecting to religious

discrimination in the workplace at Defendant' dealership, including complaints to

Defendant's representatives who were also otherwise informed of Plaintiff's

complaints of discrimination. At all times relevant herein, Plaintiff Lutz held a

reasonable good faith belief that his treatment in the workplace by Defendant was

discriminatory conduct on account of his religion.

68.     After Plaintiff Lutz engaged in protected activity, and because of his

engagement in that activity, Defendant LexJax took adverse action against the

Plaintiff in violation of the FCRA by, *inter alia*, creating a constructive discharge

of Plaintiff from his employment, refusing to give Plaintiff sales leads, interfering

with sales, unfairly disciplining Plaintiff, scrutinizing Plaintiff's work differently

from other employees, and harassing Plaintiff.

69.     The acts and omissions committed by Defendant directed at Plaintiff

were willful, malicious and in reckless disregard of Plaintiff's federally protected

civil rights.

70.     As a direct and proximate result of Defendant LexJax's retaliatory

actions, Plaintiff has suffered and will continue to suffer lost wages, benefits and

entitlements, damage to his career and reputation, personal humiliation, mental

anguish, and embarrassment justifying an award including, but not limited to, back

pay, lost benefits, front pay, and compensatory and punitive damages against

Defendant.

**COUNT VI**
**(Violation of 42 U.S.C. § 1981 – Retaliation)**

71.     Plaintiff restates and realleges each and every factual allegation

contained in paragraphs 1 through 41 above as though set forth fully herein.

72.     Plaintiff Lutz engaged in protected activity by objecting to religious

and ancestry discrimination in the workplace at Defendant's dealership, including

complaints to Defendant's representatives who were also otherwise informed of

Plaintiff's complaints of discrimination. At all times relevant herein, Plaintiff Lutz

held a reasonable good faith belief that his treatment in the workplace by

Defendant was discriminatory conduct on account of his religion and ancestry.

73.     After Plaintiff Lutz engaged in protected activity, and because of his

engagement in that activity, Defendant LexJax took adverse action against the

Plaintiff in violation of 42 U.S.C. § 1981 by, *inter alia*, creating a constructive

19

discharge of Plaintiff from his employment, refusing to give Plaintiff sales leads, interfering with sales, unfairly disciplining Plaintiff, scrutinizing Plaintiff's work differently from other employees, and harassing Plaintiff.

74.     The acts and omissions committed by Defendant directed at Plaintiff were willful, malicious and in reckless disregard of Plaintiff's federally protected civil rights.

75.     As a direct and proximate result of Defendant LexJax's retaliatory actions, Plaintiff has suffered and will continue to suffer lost wages, benefits and entitlements, damage to his career and reputation, personal humiliation, mental anguish, and embarrassment justifying an award including, but not limited to, back pay, lost benefits, front pay, and compensatory and punitive damages against Defendant.

**WHEREFORE**, Plaintiff Joseph Lutz demands relief in the form of economic damages and lost wages, including backpay and frontpay, compensatory and emotional distress damages, injunctive relief, punitive damages, prejudgment interest, attorneys' fees and costs, and any other such relief that the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

_/s/ Neil L. Henrichsen_
Neil L. Henrichsen
Florida Bar No.: 0111503
HENRICHSEN LAW GROUP,
PLLC
301 W. Bay St., 14th Floor
Jacksonville, Florida 32202
(904) 381-8183
Fax: (904) 212-2800
nhenrichsen@hslawyers.com

Attorney for Joseph Lutz