**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JOSEPH LUTZ,

     Plaintiff,

v.                                                                                    Case No. 3:21-cv-936-TJC-PDB

LEXJAX, INC.,

     Defendant.

_____

**O R D E R**

This case is before the Court on Defendant LexJax, Inc.'s Motion to Compel Arbitration and alternative Motion to Dismiss. (Doc. 9). Plaintiff Joseph Lutz has filed a Response, (Doc. 10), LexJax has filed a Reply, (Doc. 14), and Lutz has filed a Sur-Reply and Notice of Supplemental Authority. (Docs. 15, 16).

**I.    BACKGROUND**

Lutz's six-count complaint alleges that LexJax violated his civil rights under federal and Florida law by harassing and discriminating against Lutz for his Jewish faith. (Doc. 1). Lutz alleges that he worked at LexJax's car dealership as a salesman for nearly three years. Id. ¶ 9. For the first year and a half after joining the dealership, Lutz explains, he was successful in his role. Id. ¶ 15. However, he claims that once the dealership's new supervisors found out that he was Jewish, everything changed. Id. ¶ 16. He alleges that his supervisors

began making derogatory and stereotypical jokes and comments at his expense. Id. ¶¶ 17–24. Lutz further alleges that after he eventually complained to the dealership's management, his supervisors retaliated by sabotaging his sales, withholding leads, and unfairly writing him up. Id. ¶¶ 26–34. Eventually, Lutz alleges, his environment became so intolerable that he felt forced to quit. Id. ¶ 35. After filing charges with the U.S. Equal Employment Opportunity Commission and the Florida Commission on Human Relations, he brought this suit. Id. ¶¶ 38–41.

In its motion to compel arbitration, LexJax argues that it never employed Lutz, and even if it did, that this dispute is governed by an arbitration agreement. (Doc. 9 at 2). Thus, LexJax asks the Court to compel arbitration or, in the alternative, either dismiss this case for failure to join an indispensable party or for failure to state a claim. Id. at 5, 9, 11.

In support of its motion, LexJax provides documents which, LexJax argues, show that Lutz worked for Fields Motorcars of Florida, Inc. ("Fields Motorcars"). These documents include a screenshot of an internal employer portal listing Lutz's "Business Unit" as Fields Automotive Group ("Fields Auto"); a signed Fields Auto employee handbook; the employer-filled portion of Lutz's I-9, Employment Eligibility Verification form, listing his employer as Fields Auto; a photo of Lutz wearing a Fields Auto nameplate; an arbitration agreement purportedly from Fields Auto and signed by Lutz; a screenshot from

2

the Fields Auto website; and Sunbiz fictitious names records for Mercedes-Benz of Orange Park and Lexus of Jacksonville. (Docs. 9-1–9-8).

In response, Lutz offers a sworn statement that he worked for LexJax, pay stubs from 2018, 2019, and 2020 listing his employer as "LEXJAX INC DBA MERCEDES-BENZ OF ORANGE PARK," and W-2 tax documents from the same years listing his employer as "LEXJAX INC." (Doc. 10-1). He also provides Sunbiz records for LexJax and Fields Motorcars of Florida. (Docs. 10-2, 10-3).

## II.    ANALYSIS

### A.    Motion to Compel Arbitration

LexJax argues that the Fields Auto arbitration agreement that Lutz signed precludes suit for employment-related disputes arising from Lutz's employment with Fields Motorcars. (Doc. 9 at 7–9). And, while not conceding that Lutz worked for LexJax, LexJax also argues that the arbitration agreement applies to LexJax under the third-party terms of the contract and under a theory of equitable estoppel. Id. at 8–9.

Conversely, Lutz argues that the Fields Auto arbitration agreement fails because it does not properly identify the parties to the contract. (Doc. 10 at 5–11). And even if it is valid, Lutz argues, LexJax has not shown that the agreement with Fields Auto applies to Fields Motorcars or LexJax. Id. at 14–16. The Court addresses these issues in turn.

### 1. The existence of a valid contract

The Federal Arbitration Act ("FAA") states that:

> A written provision in any . . . contract evidencing a transaction . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . .

9 U.S.C. § 2. Courts treat arbitration agreements as contracts and enforce them under contract principles. See Hearn v. Comcast Commc'ns, LLC, 992 F.3d 1209, 1213 (11th Cir. 2021). Although the FAA creates some presumptions of arbitrability, these presumptions do not apply to the threshold question of "whether an agreement to arbitrate has been made." Dasher v. RBC Bank (USA), 745 F.3d 1111, 1122 (11th Cir. 2014) (citation omitted). Instead, courts apply the relevant jurisdiction's contracts law to determine whether the parties formed a valid contract to arbitrate. Id. at 1116. Here, the purported arbitration contract was formed in Florida and the parties agree that Florida contract law applies, so the Court looks to Florida law to determine whether a valid contract exists. See id.; (Docs. 9 at 7; 10 at 5).

Florida contracts require "offer, acceptance, consideration, and sufficient specification of essential terms." CEFCO v. Odom, 278 So. 3d 347, 352 (Fla. 1st DCA 2019) (citing St. Joe Corp. v. McIver, 875 So. 2d 375, 381 (Fla. 2004)). Lutz attacks the fourth element—the specification of essential terms. See (Doc. 10 at

4

5–7). He argues that the arbitration contract fails because the only parties listed in the contract are Lutz and Fields Auto Group. Id. at 6; see (Doc. 9-5). Because Fields Auto Group is apparently an unregistered fictitious name, Lutz argues that the identity of the contracting party is indiscernible and thus at least one of the essential terms of the contract is insufficiently specified. (Doc. 10 at 6–7). In response, LexJax argues that any failure to comply with Florida's fictitious name statutes does not "impair the validity" of this contract. (Doc. 14 at 2) (quoting FLA. STAT. § 865.09(9)(b)).

The answer is somewhere in between. Generally, "[a] contract entered into under a fictitious name is valid and enforceable." Premier Finishes, Inc. v. Maggirias, 130 So. 3d 238, 241 (Fla. 2d DCA 2013) (citing § 865.09(9)(b)). In such cases, "the real entity that uses the fictitious name when entering into the contract is the actual party to the contract . . . ." Id. And although Florida requires businesses to register their fictitious names, "[t]he failure of a business to [register a fictitious name] does not impair the validity of any contract . . . and does not prevent such business from defending any action, suit, or proceeding . . . ." FLA. STAT. § 865.09(9)(b). However, the Court cannot enforce a contract listing only a fictitious name if it cannot identify "the real entity that uses the fictitious name." Premier Finishes, Inc., 130 So. 3d at 241–42; cf. Berkery v. Pratt, 390 F. App'x 904, 907–08 (11th Cir. 2010) (identifying a case where Florida courts found the identity of the parties to be an essential

5

term); <u>Babul v. Golden Fuel, Inc.</u>, 990 So. 2d 680, 683 (Fla. 2d. DCA 2008) (requiring parol evidence when the identity of the contracting parties was ambiguous).

Here, LexJax argues that the real entity behind the Fields Auto Group name is Fields Motorcars of Florida. (Doc. 9 at 2) ("Fields Auto Group is a trade name for Fields [Motorcars of] Florida."). LexJax provides several documents showing an apparent relationship between Lutz and Fields Auto, such as an employee handbook and arbitration agreement, both naming Fields Auto and signed by Lutz. (Docs. 9-2; 9-5). LexJax also provides a screenshot of what appears to be an internal employer portal (for an unidentified employer) listing Lutz's "Business Unit" as "Fields Automotive Group," and a copy of the employer-filled portion of his I-9, apparently signed by a Fields Auto Group payroll specialist. (Docs. 9-1, 9-3).

However, the evidence connecting fictitiously named Fields Auto to Fields Motorcars is less clear. Aside from asserting that "Fields Auto Group is a trade name for Fields [Motorcars of] Florida," LexJax does not cite to any evidence to show a connection between Fields Auto and Fields Motorcars. (Doc. 9 at 2); <u>see</u> (Doc 14 at 1–2) (discussing Florida's Fictitious Name statute). The closest link between Fields Auto and Fields Motorcars comes from Lutz's Response, which attaches Fields Motorcars' corporate registration page. (Doc. 10-3). That page lists Fields Auto Group as Fields Motorcars' registered agent. <u>Id.</u> But a

6

registered agent is merely an entity which can accept legal process—it does not necessarily follow that a business' similarly-named registered agent is also a trade name for the same business. Compare FLA. STAT. § 607.0501(1) (Florida's registered agent statute), with FLA. STAT. § 865.09(2)(c) (Florida's fictitious name statute).

Further, several of the entities share a connection to an address in Orlando: 350 S. Lake Destiny Drive, Orlando, Florida 32810. See, e.g., (Doc. 10-3 at 2) (Fields Motorcars' Sunbiz page listing the Orlando address as its mailing address and as its registered agent, Fields Auto's, address); (Doc. 10-2 at 2) (LexJax's Sunbiz page listing the Orlando address as its mailing address and the address of its registered agent). But LexJax does not explain what relationship these entities share through a common mailing and registered agent address, and the Court will not speculate.

This is a close call. It does not require a great stretch of the imagination to see how Fields Auto may be a fictitious name for Fields Motorcars. It is not hard to envision how a complicated corporate structure may account for the conflicts in the evidence. And there is a purported arbitration agreement with Lutz's signature on it. See (Doc. 9-5). But LexJax, as the party asserting the existence of a valid arbitration contract, bears the burden of proving its validity. UAPT Mgmt., LLC v. Barnes, 320 So. 3d 851, 857 (Fla. 2d DCA 2021). And here, that means proving that Fields Motorcars is the real party in interest to this

7

contract. LexJax misses this step. Although Fields Auto and Fields Motorcars have similar names and apparently share some commonalities, such as mailing addresses, the Court cannot assume that they are the same entity. LexJax's motion to compel arbitration suffers from a failure of proof.

## 2. LexJax as a third-party beneficiary

Alternatively, LexJax argues that even if Lutz was a LexJax employee, the arbitration agreement between Lutz and Fields Auto still applies to LexJax. (Doc. 9 at 8–9). First, LexJax points to the contractual language broadly expanding the agreement to parties "whose liability or right of recovery derives from a Dispute which is covered by this Agreement" including affiliates, agents, and other related entities. Id. at 8; (Doc. 9-5 at 2). Second, LexJax argues that the agreement should also be enforced in LexJax's favor under a theory of equitable estoppel, which allows a valid contract to be enforced in favor of some non-signatories. (Doc. 9 at 8–9).

However, "[a] third-party beneficiary's rights depend upon, and are measured by, the terms of the contract between the promisor and the promisee." Zac Smith & Co., Inc. v. Moonspinner Condo. Ass'n, Inc., 472 So. 2d 1324, 1324 (Fla. 1st DCA 1985). As discussed above, LexJax has not made the threshold showing that a valid arbitration contract exists and who the parties are, so here the Court's inquiry ends. See Lion Gables Realty Ltd. v. Randall Mechanical, Inc., 65 So. 3d 1098, 1099–1100 (Fla. 5th DCA 2011) (holding that a finding of

the validity and existence of a contract must come before an analysis of third parties).

Because LexJax has not shown that a valid arbitration contract exists between Lutz and his alleged employer, the Court denies LexJax's motion to compel arbitration.[1]

**B.      Motion To Dismiss**

Next, LexJax asks the Court to dismiss the complaint for two reasons. First, LexJax argues that Lutz has failed to join an indispensable party, Fields Motorcars. (Doc. 9 at 9–11). Second, LexJax argues that Lutz has failed to state a claim upon which relief can be granted because Lutz's allegations misidentify his employer. Id. at 11–13. The Court disagrees.

<u>1. Dismissal under Rule 12(b)(7)</u>

Rule 12(b)(7) allows a party to move for dismissal for "failure to join a party under Rule 19." FED. R. CIV. P. 12(b)(7). Rule 19 provides circumstances in which a person must be joined as a "required party," such as if a court "cannot accord complete relief among existing parties" without their joinder, or where their absence would impair their ability to defend themselves or subject them to inconsistent obligations or multiple liability. FED. R. CIV. P. 19(a)(1)(A)–(B).

---

[1] Lutz also argues that the purported contract is invalid because it is not signed by a representative for Fields Auto. (Doc. 10 at 7–11). The Court does not reach this argument because it is not necessary for its conclusion.

If a required party "cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." FED. R. CIV. P. 19(b). Courts are directed to consider a range of factors, including prejudice to the required party and existing parties; whether the prejudice may be lessened or avoided; the adequacy of a judgment without the required party; and the plaintiff's remedy if the action is dismissed. FED. R. CIV. P. 19(b)(1)–(4).

Here, LexJax argues that Fields Motorcars, as Lutz's true employer, is a required party. (Doc. 9 at 9). As LexJax argues, Fields Motorcars "has an interest in defending" Lutz's claims and may be subject to subsequent litigation, even if LexJax prevails here. Id. at 10–11. But because Fields Motorcars is purportedly bound by an arbitration agreement, it cannot be joined to this action. Id. Accordingly, LexJax asks the Court to dismiss this action. Id. at 11.

In response, Lutz argues that LexJax, not Fields Motorcars, is his true employer, that no evidence points otherwise, and that Fields Motorcars, as a separate legal entity, does not risk multiple liability or inconsistent obligations. (Doc. 10 at 16).

Rule 19 does not apply here because LexJax has not shown that Fields Motorcars is a necessary party. As discussed above, although LexJax shows a connection between Lutz and Fields Auto, LexJax has not adequately linked Fields Auto—and thus Lutz—to Fields Motorcars. See supra, Section II.A.1. To

the contrary, the evidence suggests, as Lutz argues, that LexJax is the properly named defendant in this case. See (Doc. 10-1 at 5–8) (Lutz's paychecks issued by LexJex); id. at 10–15 (Lutz's W-2 Wage and Earning Statements listing LexJax as his employer). Without a proven connection to this action, LexJax has not shown that Fields Motorcars' presence is necessary for complete relief among the parties or to prevent multiple liability or inconsistent obligations. See FED. R. CIV. P. 19(a). Thus, the Court declines to dismiss this action under Rule 12(b)(7).

### 2. Dismissal under Rule 12(b)(6)

Next, LexJax argues that this case should be dismissed under Rule 12(b)(6) because Lutz has failed to state a claim. (Doc. 9 at 11–13). Specifically, LexJax argues that Lutz's federal and Florida law claims fail because they require an employer/employee relationship between the plaintiff and defendant, but LexJax was not Lutz's employer. Id.

However, "[t]o survive a [12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Lutz has met this burden. He alleges that LexJax was his employer, and the Court finds this sufficient to survive LexJax's 12(b)(6) motion. See Iqbal, 556 U.S. at 678. Thus, the Court will not dismiss the complaint.

11

Accordingly, it is hereby

**ORDERED:**

1. Defendant's Motion to Dismiss and Compel Arbitration or In the Alternative Dismiss for Failure to Join an Indispensable Party and/or Failure to State a Claim (Doc. 9) is **DENIED**. Defendant shall answer the Complaint no later than **July 26, 2022**.

2. The parties shall jointly file a Case Management Report consistent with Local Rule 3.02 no later than **August 5, 2022.**

**DONE AND ORDERED** in Jacksonville, Florida the 12th day of July, 2022.



TIMOTHY J. CORRIGAN
United States District Judge

rmv
Copies:

Counsel of record

12